MAYOR AND ALDERMEN OF JERSEY CITY v. THE TOWN
OF KEARNY ET AL.

Submitted December 4, 1904—Decided February 27, 1905.

1. The existence of a subsisting contract to supply a town with
   water does not prevent the town council from making a contract
   for a further or other supply under the act of 1888. *Pamph.
   L., p.* 366.
2. The fact that Jersey City owns a water main in the town of
   Kearny, through which it supplies the borough of East Newark
   and private consumers in Kearny with water, does not give
   Jersey City a standing to question a contract between Kearny
   and a water company for a supply of water.
3. A voluntary proposition by the mayor of Jersey City, not invited
   by the municipal authorities of Kearny and not authorized by
   the municipal boards of the city, does not give Jersey City a
   standing to question such a contract.

On *certiorari.*

Before Justices DIXON and SWAYZE.

For the prosecutor, *George L. Record* and *Robert Carey.*

For the town of Kearny, *J. Franklin Crowell.*

For the water companies, *Collins & Corbin.*

The opinion of the court was delivered by

SWAYZE, J. The prosecutor seeks to set aside resolutions
adopted by the town council of Kearny on August 15th, 1904,
by which a contract made June 29th, 1895, between the
East Jersey Water Company and the township committee of
the township of Kearny, and the supplemental contracts of
February 14th, 1896, June 17th, 1897, and June 14th, 1898,
were ratified and the term extended for ten years.

The town of Kearny is the successor of the former township
of Kearny. Jersey City is a separate municipality. The right

of Jersey City to question the contract between Kearny and the water companies is rested upon three grounds:

1. That Jersey City, at the time of the passage of the resolutions, had a contract with Kearny to supply the town with water.

2. That Jersey City owned a main in Kearny, which was connected by taps with one hundred and fifty houses and factories in Kearny, and by three connections with the town mains, through which main Jersey City had contracted to supply the borough of East Newark with water.

3. That on April 13th, 1904, the mayor of Jersey City offered to make a ten-year contract with Kearny for a water-supply, at a rate of $60 per million gallons, as against $82.50 cents per million gallons, agreed to be paid to the water companies.

We think that the case fails to show any such interest in Jersey City as will enable it to prosecute this writ and to interfere with a contract between another municipality and the water companies.

*First.* If Jersey City has, as it claims, a subsisting contract with Kearny which has not yet expired, its remedy is by suit for breach of that contract, not by setting aside a contract which Kearny may deem it advisable to make for a supply of water from another source. If there is such a subsisting liability to Jersey City, it may be impolitic for Kearny to incur a further liability to the water company, but that is a question for the town authorities to decide.

By the act of 1888 (*Pamph. L., p.* 366; *Gen. Stat., p.* 2210, *pl.* 405), the board of any municipal corporation having charge of the water-supply are authorized to contract with a water company for a supply or a further or other supply of water to such municipal corporation. By the act for the formation, establishment and government of towns (*Pamph. L.* 1895, *p.* 218, § 54; *Gen. Stat., p.* 3536, *pl.* 205), the town council is given power to provide for a supply of water by contract with private corporations. These two acts authorized the town council to contract for a further or other supply of

water, and even if there was a subsisting contract with Jersey City the new contract is not illegal, and the court has no right to interfere at the instance of Jersey City.

*Second.* The making of a new contract with the water company does not deprive Jersey City of any property right it may have in its own main, nor interfere with its delivery of water through the main to East Newark, nor deprive Jersey City of any right it may have to charge the one hundred and fifty consumers in Kearny for water actually taken by them, or in default thereof to cut off the supply. If the water company or the town of Kearny uses Jersey City's main without legal right, such unlawful user may give Jersey City a right of action, but does not enable it to question the present resolutions. Those resolutions do not purport to authorize any interference with Jersey City's main; on the contrary, they contemplate the construction of a new main by the water companies. Since the existing rights of Jersey City cannot be affected by the new contract with the water company, Jersey City has no interest upon this ground which enables it to question that contract.

*Third.* The case shows that the proposition made by the mayor of Jersey City to supply water to Kearny was made upon his own responsibility, and was not authorized by the municipal boards in Jersey City, whose formal action would have been necessary to the making of a contract. The fact that the members of these boards now testify that they would have been ready at the time of making the proposition by the mayor to vote for a contract embodying the terms of his proposition, does not alter the case. If Kearny had accepted the proposition of the mayor, it would have still been open to Jersey City to refuse to make the contract. The case is different from one where a contract made with one bidder for public work is questioned by another bidder.

Kearny was under no obligation to solicit bids for a supply of water (*Brady* v. *Bayonne*, 28 *Vroom* 379, 381), and bids had not been solicited. The proposition of the mayor of Jersey City was merely his individual act, not the act of the

city, and the town council was under no obligation to consider it; their failure to do so does not affect any right of Jersey City. The case differs from *Traction Co.* v. *Board of Works,* 27 *Vroom* 431. The right of the prosecutors in that case rested upon the fact that they had presented a petition to the board of works requesting permission to lay tracks in certain streets, and that the consent given to the Camden Horse Car Railroad Company practically excluded them from all hope of obtaining any right in the same streets. They were entitled to a fair consideration of their petition, and that fair consideration was precluded by, the action of the board. In that case the filing of the petition gave the prosecutors a standing to have it considered. The mere voluntary offer of an individual citizen of Jersey City does not give that municipality any standing in the present case.

In *Stanley* v. *Passaic,* 31 *Vroom* 392, the prosecutor was the lowest bidder in response to an advertisement for proposals for mason work on a bridge, and the contract was awarded to him. He was thus in a position to question the subsequent effort to rescind the resolution awarding the contract to him and to award it to the next lowest bidder.

Neither of these cases is applicable in the present case.

The writ must be dismissed, with costs.