Edwin R. Lynde, J.
These are proceedings instituted under section 298 of the Executive Law, by the State Commission For Human Bights for a court order enforcing an order of the commission dated September 29, .1967 and by two of the respondents named in that proceeding who seek to review and annul the order of September 29, 1967.
*921 The petition for enforcement submitted by the State commission names as respondents Suburban Associates, Inc., a corporation licensed as a real estate broker by the State, Ramon T. Litton, president of Suburban and listed by the Department of State as the representative broker for Suburban, and Robert Knox, a licensed real estate salesman, employed by Suburban and whose license was issued and maintained under the sponsorship of Suburban.
No answer to that petition has been tiled. The respondents Suburban and Litton, instead, have submitted a separate petition for annulment of the commission’s order, alleging that the commission’s determination was not founded on competent, relevant, or factual evidence, was arbitrary and capricious, and violated their constitutional rights. With respect to Suburban and Litton, the com t will consider their petition as serving' a dual purpose: that is, as an original proceeding and as an answer to the proceeding instituted by the commission. Knox is not a party to the Suburban-Litton petition and has not answered the commission’s petition. Accordingly, the relief applied for by the commission with respect to Robert Knox is granted, except as hereinafter indicated.
On January 27, 1966, Lamar Cox filed a complaint with the State Commission For Human Rights charging that he had attempted to purchase a home which had been advertised for sale by Suburban and that his efforts were frustrated because of his color by various dilatory and discouraging tactics engaged in by salesmen employed by Suburban. Appointments which were not kept and broken promises were referred to, as well as other acts indicating a lack of co-operation and an over-all passive attitude inconsistent with the eagerness to consummate a transaction normally exhibited by a salesman. The complainant’s accusation was based on the acts of two salesmen. The complaint issued by the commission was directed against Suburban, its president, and the two salesmen.
A hearing was held by the commission on March 14, 1967. The individuals concerned were present and represented by counsel, as was the corporation. On September 29, 1967, the commission handed down its determination by incorporating it in an order which contained 58 findings of fact and 4 conclusions of law. On the basis of the conclusions and findings, the directory provisions of the order required Suburban, Litton and Knox to cease and desist from engaging in discriminatory practices and to take certain affirmative action in connection therewith. The affirmative action included writing letters of apology to Cox, sending formal written notice by Suburban and Litton *922 to all agents, salesmen and employees instructing them with respect to their responsibilities, displaying the commission’s regulatory poster, making appropriate information and records available to the commission, and a requirement that Suburban and Litton and Knox “ shall make all listings available to to prospective purchasers without regard to their race, creed, color or national origin.”
Suburban and Litton argue that the order of the commission as directed against them must be annulled on the grounds: (1) that there was no proof that Litton at any time was aware of, participated in, or countenanced the acts of Knox, and; (2) that the testimony of Lamar Cox adduced at the hearing should not have been received because the commission intake officer, who heard Cox’ story and who prepared the complaint which instituted proceedings before the commission, had destroyed his notes.
As to the first point raised, there is no question that there was no evidence directly connecting Litton or Suburban with the events investigated. In a concurring opinion handed down by one of the Commissioners, it was made clear that the order directed against them was based solely on the ground of respondeat superior. As authority the commission cited Ultramares Corp. v. Touche, Niven & Co. (255 N. Y. 170). This court agrees with the commission. Under certain regulatory statutes where compliance is an absolute obligation of every person subject thereto, an employer may be held to be answerable for the acts of an employee even though committed without the employer’s knowledge o.r consent or even against his direct prohibition. The overriding public policy that dictated enactment of the legislation would be frustrated if corporations or employers could evade their responsibility by claiming a challenged act was unauthorized. The statute imposes a duty which i-s nondelegable. The employer must remain responsible for the manner in which the business is conducted (cf. People ex rel. Price v. Sheffield Farms Co., 225 N. Y. 25; Cha-Kir Realty Corp. v. Sanchez, 183 Misc. 427).
As for the point that the constitutional rights of Suburban and Litton have been impaired, it is argued that the right of an accused to confront his accusers includes the right of cross-examination; the right of cross-examination includes the right to impeach witnesses; the right to impeach witnesses includes the right to confront any given witness with statements made by or taken from him. Here, a commission official interviewed Cox at the time the complaint was filed and made notes. The official then dictated the complaint and the notes were destroyed. *923 Cox signed the complaint. The failure to produce the notes at the hearing gives rise to the issue now confronting the court. On that question, I find that there was no violation of the rights of Suburban and Litton. In the absence of any indication that destruction of the notes was for any improper purpose or that the data contained therein were not preserved in official records or reports, there is no requirement .that all memoranda made in the course of an investigation be preserved (United States v. Comulada, 340 F. 2d 449, cert. den. 380 U. S. 978). Suburban and Litton rely on the rules for production of statements as enunciated in Jencks v. United States (353 U. S. 657). They concede that legislation, incorporating the principles laid down in Jencks v. United States, subsequently enacted by Congress (U. S. Code, tit. 18, § 3500) governs Federal cases only, but claim that the common-law basis of Jencks v. United States is applicable. Assuming that contention to be correct, there is no reason for invoking the Jencks rule in this proceeding. Destruction of interview notes in accordance with normal administrative practice does not justify imposition of sanctions where the substance of the material has been made available (Ogden v. United States, 323 F. 2d 818). There was no indication here that the notes were signed, adopted or approved by Cox or even seen by him.
Article 15 of the Executive Law, known as the ‘ ‘ Law Against Discrimination ’ ’ is not viewed as a penal statute (Matter of Marrano Constr. Co. v. State Comm. For Human Rights, 45 Misc 2d 1081). In enforcement proceedings thereunder it is not necessary that findings be based on evidence establishing them beyond a reasonable doubt. It is sufficient if the findings are supported by evidence sufficiently substantial to permit inferences of the existence of the facts found to be reasonably drawn (Matter of Holland v. Edwards, 307 N. Y. 38). The commission, at its hearing, is not bound by the strict rules of evidence prevailing in courts of law or equity (Executive Law, § 297, subd. 2, par. b). Striking the testimony for the reason assigned by Suburban and Litton is not warranted.
It is the opinion of this court that the findings of the commission are supported by sufficient evidence and are therefore, conclusive (Executive Law, § 298). However, in the portion of the commission’s order, which contained directory provisions, directive (h) goes beyond the reasonable authority of .the commission. That part of the order .reads: “Respondent Robert Knox and respondent Suburban Associates, Inc., by its president and representative broker Ramon T. Litton, shall *924 make all listings available to prospective purchasers without regard to their race, creed, color or national origin.”
While the commission has broad power to require a violator to take such affirmative action as may be necessary to effectuate the purposes of the law (Executive Law, § 297, subd. 2, par. c), the remedy imposed will not be enforced if it is unreasonable (Matter of State Comm. For Human Rights v. Lieber, 52 Misc 2d 1079; Matter of Lawrence Gardens v. State Comm. For Human Rights, 53 Misc 2d 20).
The commission’s mandate is far .too vague. What is meant by “prospective purchasers ”? Who decides whether the individual who walks in is genuinely a “ prospective purchaser ”? He may be a shopper, he may be a checker for the Commission For Human Rights, he may represent a competitor. Would a failure to make listings available to any of these be a violation of the commission’s orders?
If by “ prospective purchasers ’ ’ the commission intended that the books and listings be made available to every person who walks in, then the order is unreasonable. A broker should be free to exercise his own business judgment as to how much time and effort he will expend on a person who claims to be a prospective purchaser. The directive would completely deprive him of this right. He would no longer be in a position to determine whether the individual before him is actually a potential buyer, or whether he is shopping, representing a competitor, engaged in under cover investigation, or simply looking for a ride in the country. Whatever industry, ingenuity and diligence he has exercised in procuring and processing listings would go for naught if he must make all his listings available to all including those who would use them for their own selfish purposes. He would be in an untenable business position.
It is significant that, in this proceeding, there was no finding that there was a general policy of discrimination. The directive here might be a reasonable one if all brokers were subject to the same duty. To single out one for this treatment is unfair and discriminatory. Discrimination in the name of civil rights is as abhorrent as discrimination which does violence to the concept of civil rights.
The application by the State Commission For Human Rights is granted except that paragraph (h) of the order shall be deleted.
The application of Suburban and Litton is granted to the extent of deleting paragraph (h) from the order of the commission. In all other respects, it is denied.