ANN LEARY *v.* WILLIAM B. JOHNSON ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued December 4, 1969—decided January 21, 1970

*Leo Gold,* for the appellant (plaintiff).

*G. Whitney Biggs,* for the appellees (defendants).

ALCORN, J. The plaintiff brought this action to recover damages for injuries alleged to have been received in a fall on a wet floor in the defendants' house. When all the evidence was in, the court directed a verdict for the defendants. The plaintiff appeals from the final judgment and assigns as error the refusal to set the verdict aside. "In reviewing the action of the trial court, in first directing and thereafter refusing to set aside the verdict, we consider the evidence in the light most favorable to the plaintiff." *Johnson* v. *Consolidated Industries, Inc.,* 153 Conn. 522, 524, 218 A.2d 380.

The jury could reasonably and logically have found the following facts: The plaintiff and her husband had agreed with Louis F. and Eileen Albano to share the profit or loss in the sale of a house built on property owned by Mr. Albano in Greenwich. The defendant Mary Johnson, who lived in Wayne, Pennsylvania, with her husband, first saw the house in January, 1960, and she and her husband

purchased it on June 10, 1960, intending to occupy it on June 18. The defendants were absent from Greenwich from June 10 to June 17. At the time of the purchase, the house had not been completed. Landscaping remained to be done, floors required refinishing, garage doors had to be replaced, and upstairs closets had not been completed. At the time of purchase, $1200 was withheld pending completion of the work. Prior to June 10, the plaintiff assisted Mrs. Johnson in purchasing fixtures on which the plaintiff was able to obtain discounts. On June 10, after the transfer of title, Mrs. Johnson asked the plaintiff to "follow through" on the drapery people, the rug people and the shade people and to get the house cleaned up and ready for the defendants to move in on June 18. Mrs. Johnson wanted the floors cleaned and the whole house put in good order. The plaintiff called the Brennan Agency in Greenwich and asked for a man to clean the house, including the floors. The Brennan Agency sent Willy Hicks to do the work on June 16, and he washed the playroom floor and other areas of the house. The plaintiff was at the house on June 16, supervising the installation of curtains and shades, and she directed Hicks to wash the downstairs playroom floor and hall. She went there with Hicks in order to show him what to do, and the floor was then dry. Hicks ceased his work on the playroom floor and hall by lunchtime. About 5 p.m. the plaintiff went downstairs to pay Hicks and to check on his work. As she stepped off the landing on to the vestibule floor, she slipped in water which was on the floor, fell and broke her left leg. The Brennan Agency charged the defendants a commission for providing Hicks' services. Mrs. Albano paid Hicks $24 for his work and was later reimbursed by the defendants.

The plaintiff claimed that Hicks was the defendants' agent and that the defendants were legally responsible for his negligence in leaving the water on the floor and causing the plaintiff's fall. The defendants claimed that Hicks was either an independent contractor personally liable for any negligence in doing his work or the agent of the plaintiff to whom his negligence must be imputed so as to bar her recovery on the ground of contributory negligence. They further claimed that, in any event, they were not chargeable with notice, actual or constructive, of the defect which is claimed to have caused the plaintiff's fall.

The court's action in directing the verdict for the defendants can be sustained only if the jury could not reasonably and legally have reached a conclusion other than in their favor. *Santor* v. *Balnis,* 151 Conn. 434, 435, 199 A.2d 2. "Directed verdicts are not favored and should be granted only when the jury could not reasonably and legally reach any other conclusion." *Console* v. *Nickou,* 156 Conn. 268, 270, 240 A.2d 894; *Bambus* v. *Bridgeport Gas Co.,* 148 Conn. 167, 168, 169 A.2d 265.

The defendants' liability, if it existed, would arise from Hicks' act in leaving water on the floor in such a way as to create a defective and dangerous condition which caused the plaintiff's fall. If Hicks was the defendants' agent in doing what he did, liability could be imposed on the defendants for a negligent act which Hicks, as their agent, had committed. *Mitchell* v. *Resto,* 157 Conn. 258, 262, 253 A.2d 25; *Deacy* v. *McDonnell,* 131 Conn. 101, 104, 38 A.2d 181; *Russo* v. *McAviney,* 96 Conn. 21, 23, 112 A. 657. If, however, Hicks was doing the work as an independent contractor, he, and not the defendants, would be liable for the results of his own negligence.

*Trainor* v. *Frank Mercede & Sons, Inc.,* 152 Conn. 364, 368, 207 A.2d 54. Nor could liability be imposed on the defendants if Hicks was solely the agent of either the plaintiff or the Brennan Agency.

The essential question, therefore, is whether the jury could, from the evidence before them, reasonably and legally conclude that Hicks was acting as the agent of the defendants in doing what he did. The further questions whether he was negligent and whether there was contributory negligence on the plaintiff's part are not now before us.

When an agency relationship is claimed to exist, it must be proved by a fair preponderance of the evidence. *Iodice* v. *Rusnak,* 143 Conn. 244, 247, 121 A.2d 275. The existence of an implied agency is essentially a question of fact the proof of which is generally found in the acts and conduct of the parties. *Cleaveland* v. *Gabriel,* 149 Conn. 388, 394, 180 A.2d 749.

From the evidence offered the jury might reasonably conclude that the activities undertaken by the plaintiff not only in supervising the installation of curtains and shades and in directing cleaning operations but in previously assisting Mrs. Johnson in the purchase of fixtures for the house were in furtherance of the defendants' interests as future occupants of the house rather than any interest which the plaintiff may have had in the sale of the house.

The factual question was also presented whether an agency relation existed between the plaintiff and the defendants in which the plaintiff was authorized to employ Hicks as a subagent and employee of the defendants. *Bieluczyk* v. *Crown Petroleum Corporation,* 134 Conn. 461, 469, 58 A.2d 380. An essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the prin-

cipal. *Levitz* v. *Jewish Home for the Aged, Inc.,* 156 Conn. 193, 195, 239 A.2d 490; *Bieluczyk* v. *Crown Petroleum Corporation,* supra; *Amento* v. *Mortensen,* 130 Conn. 682, 686, 37 A.2d 364; *Burwell* v. *Neumann,* 130 Conn. 117, 119, 32 A.2d 640; Restatement (Second), 1 Agency § 1, comment a.

On the evidence before them the jury could have found, among the various possibilities presented, that the work in which Hicks was engaged was furthering the purposes and interests of the defendants and that his services had been obtained by the plaintiff as the defendants' agent. "Litigants have a constitutional right to have issues of fact decided by the jury." *Bambus* v. *Bridgeport Gas Co.,* 148 Conn. 167, 169, 169 A.2d 265. The jury were in the advantageous position of seeing and hearing the witnesses and, from their testimony, determining the true relationship of the parties. The court could not, as a matter of law, say that the jury could not have concluded that Hicks was, in doing what he did, acting as the defendants' agent. This ultimate conclusion of fact should have been left to the jury under proper instructions concerning the several legal relationships which lurked in the evidence offered.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.